# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CR-0039-CVE |
| ) | |
| KEENAN DANCELL VERNER, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court are Defendant's Motion to Suppress (Dkt. # 17) and Defendant's Motion in Limine Regarding Criminal History and Alleged Statements about Criminal History Made During Arrest (Dkt. # 27). Defendant claims that he was unlawfully arrested, and he seeks to exclude evidence recovered by police during the illegal detention. Dkt. ## 17, 18. Defendant has also filed a motion in limine to exclude statements made during his arrest that could reference his criminal history and to prevent the government from using his prior convictions against him at trial. Dkt. ## 27, 28. The government has filed responses to the motion to suppress and the motion in limine. Dkt. ## 29, 31. An evidentiary hearing was held on the motion to suppress, and defendant was present and represented by counsel. Dkt. # 33.

**I.**

On December 8, 2014 at approximately 12:30 p.m., Tulsa Police Department (TPD) Officers William Randolph MacKenzie[1] and Tim Wilson went to the parking lot of the Flying J Travel Plaza (Flying J) at 121 North 129th East Avenue, Tulsa, Oklahoma, to investigate a possible drug

---

[1] In this Opinion and Order, the Court will refer to Officer William Randolph MacKenzie as "MacKenzie" and his brother, Corporal Andrew MacKenzie, as "Corporal MacKenzie."

transaction. MacKenzie had received a tip from a confidential informant (CI) that a drug transaction was going to take place at the Flying J, and the CI stated that the black male driving a black Jeep Liberty would be selling methamphetamine. The CI had previously assisted MacKenzie on at least four other investigations, and the CI's information had led to the arrest of numerous persons. The CI had also provided information used to obtain search warrants for locations housing possible methamphetamine laboratories, and the CI had helped MacKenzie set up controlled buys. According to MacKenzie, the CI had never provided inaccurate or misleading information.

MacKenzie and Wilson were in the south parking lot of the Flying J in an area designated for passenger vehicles, rather than commercial trucks, and they were in Wilson's unmarked truck. MacKenzie and Wilson observed a black Jeep Liberty in the parking lot of the Flying J, and the vehicle was occupied by a black male driver and a white female passenger. The black male, later identified as Keenan Dancell Verner, got out of the black Jeep Liberty and walked to the north side of the Flying J parking lot. MacKenzie and Wilson drove to the north side of the parking lot and observed Verner sitting in the passenger seat of a white truck occupied by a white male driver. The officers believed that they were witnessing a drug transaction, but Wilson testified that surveillance of the white truck was difficult due to the large commercial trucks parked in the north parking lot. MacKenzie and Verner testified that they did not actually see any drugs or money change hands. After three to five minutes, Verner exited the white truck and walked over to a red Kia driven by a black male, later identified as Kenneth Taylor. Verner entered the red Kia and MacKenzie and Wilson watched as the red Kia was driven to a business across the street from the Flying J. Verner

went inside the business and then he returned to the red Kia.[2] Wilson had moved his truck to a location where he could view the red Kia parked across 129th East Avenue. MacKenzie and Wilson were about 75 yards away from the red Kia and they observed Verner and Taylor interacting. The red Kia returned to the Flying J parking lot about five minutes later, and MacKenzie asked Corporal MacKenzie and Officer Tyler Turnbough to stop the red Kia in the Flying J parking lot.

The initial stop of the red Kia was recorded on the dash camera of Corporal Mackenzie's low profile police unit. The video shows three police officers in uniform approach the red Kia with firearms displayed and at times pointed at the vehicle. Turnbough testified that five police officers, not including MacKenzie and Wilson, were present.[3] Corporal MacKenzie's firearm was visible and not pointed directly at the vehicle, but Turnbough testified that his firearm was pointed at the vehicle.[4] The police officers directed the two men in the vehicle to show their hands and slowly step out of the vehicle. The driver, Taylor, exited the vehicle first, and he was immediately placed in handcuffs by Corporal MacKenzie. Verner briefly pulled his hands down to open the passenger side door, and he stepped out of the vehicle. Verner was immediately placed in handcuffs by Turnbough. Turnbough testified that he conducted a brief patdown of defendant's person, but he did not find any weapons or illegal drugs on defendant's person. Corporal MacKenzie and Officer Turnbough testified that they detected a strong odor of marijuana coming from the red Kia. After Verner and Taylor were handcuffed, Corporal MacKenzie ran a records check and found that both men had

---

[2]   Defense counsel suggested that the business was a tire shop, but the police officers who testified at the evidentiary hearing could not recall the name or nature of the business.

[3]   Turnbough testified that TPD Officers Ian Adair, Brad Blackwell, and Adam Miller arrived in a separate patrol car and were serving as backup or cover for the stop.

[4]   Turnbough's testimony is consistent with the videorecording from the dash camera, and his firearm was pointed at the vehicle when he approached the red Kia.

3

outstanding misdemeanor warrants. Verner and Taylor were formally arrested based on the outstanding warrants. A canine unit was called to the scene of the detention and the canine, Jake, alerted to the presence of illegal drugs.

Turnbough searched Verner more thoroughly after he was formally arrested, and Turnbough found two baggies containing a crystal-like substance in Verner's underwear. The substance field tested positive for methamphetamine, and laboratory testing later confirmed that the substance was 55.35 grams of methamphetamine. Verner told Turnbough that "I'm on federal paper" and "I'm going for a long time," and Turnbough testified that Verner made the statements voluntarily and not in response to interrogation.

Verner has been charged with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(viii). The government has filed an enhancement information based on defendant's prior felony drug convictions, and he faces a mandatory minimum sentence of 10 years and a possible maximum sentence of life imprisonment. In a related proceeding, defendant is charged with violating the conditions of his supervised release. Defendant was previously convicted of possession of marijuana with intent to distribute and possession of a firearm after former felony conviction, and he was sentenced to 96 months imprisonment and 36 months of supervised release. United States of America v. Keenan Dancell Verner, 07-CR-080-CVE (N.D. Okla.).

## II.

Defendant raises five arguments in his motion to suppress: (1) the government bears the burden to establish that his detention and arrest were lawful; (2) the initial contact between defendant and police rose to the level of an arrest and was not an investigative detention; (3)

4

defendant's arrest was not supported by probable cause; (4) statements made by defendant following his arrest were the product of unlawful coercion; and (5) the conduct of police officers became unlawful before defendant was placed under arrest on misdemeanor arrest warrants. Dkt. # 18.

**A.**

Defendant argues that the government bears the burden to establish that a constitutional violation did not occur. Dkt. # 18, at 1-2. The Tenth Circuit has clearly established the burdens of a criminal defendant and the government in cases when the defendant challenges the legality of his detention. In United States v. Ladeaux, 454 F.3d 1107 (10th Cir. 2006), the Tenth Circuit stated that:

> to successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights. The defendant then bears the burden of demonstrating a factual nexus between the illegality and the challenged evidence. Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.

Id. at 1111 (quoting United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000)). To establish the factual nexus between the alleged illegality and the evidence to be excluded, the defendant must show that the evidence he seeks to suppress "would not have come to light but for the government's unconstitutional conduct . . . ." Id.

**B.**

Defendant argues that police lacked reasonable suspicion to stop the red Kia driven by Taylor, because MacKenzie and Wilson did not have sufficient objective evidence to believe that defendant was engaged in a drug transaction. He also asserts that the manner in which the stop was carried out immediately elevated the stop of the red Kia into an arrest. The government responds

5

that the CI's tip and defendant's behavior gave rise to a reasonable suspicion that he was selling illegal drugs, and that the use of firearms and handcuffs does not automatically elevate an investigative detention to an arrest.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968). "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). In balancing these interests, the Supreme Court has held that arrests, being the most intrusive of Fourth Amendment seizures, are reasonable only if supported by probable cause. Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996). Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity. Novitsky, 491 F.3d at 1253. The investigative detention must be "justified at its inception and reasonably limited in scope." United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). The Tenth Circuit has made a clear distinction between the level of suspicion needed to initiate an arrest and an investigative detention:

> While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)).

The Court finds that police had reasonable suspicion to stop the red Kia for the purpose of conducting an investigative detention. Defendant argues that his conduct was "wholly innocent" and that police admit they did not actually see a drug transaction, but the Court must consider the totality of the circumstances to determine if reasonable suspicion existed. MacKenzie received a tip from a CI that a black male driving a black Jeep Liberty would be found at the Flying J parking lot for the purpose of engaging in a drug transaction. The CI had provided reliable information in previous investigations and MacKenzie testified that the CI's information had never been inaccurate or misleading. MacKenzie and Wilson went to the Flying J and observed a black Jeep Liberty with a black male driver. They watched as defendant exited the black Jeep Liberty and entered a white truck, and a white male was in the white truck. The white truck was parked in a area designated for commercial trucks, and Wilson testified that this was unusual. Defendant stayed in the white truck for about three to five minutes. Based on training and experience and the CI's tip, the MacKenzie and Wilson believed that they were witnessing a drug transaction, although they acknowledged that they not actually see drugs or money change hands. Defendant exited the white truck and walked over to a red Kia. The red Kia drove out of the Flying J parking lot to a nearby business, and parked in a parking lot across the street from the Flying J. MacKenzie and Wilson observed defendant and Taylor interacting in the red Kia, and they believed that another drug transaction took place in the red Kia. Under the totality of the circumstances, these facts give rise an objective and articulable basis for officers to believe that defendant had committed a drug offense and it was reasonable for MacKenzie to request that Corporal MacKenzie stop the red Kia.

However, the Court must also consider the manner in which the stop was carried out, because defendant argues that the use of firearms and handcuffs escalated the encounter into an arrest. The Court has viewed the videorecording from the dash camera of Corporal MacKenzie's vehicle, and it shows three officers approaching the red Kia with firearms displayed. At least two of the officers had firearms pointed at the red Kia. Defendant and Taylor were immediately placed in handcuffs. The Court also notes that Corporal MacKenzie's vehicle was parked directly behind the red Kia and the red Kia was surrounded by parked vehicles on all sides, and the red Kia could not have been moved once the encounter was initiated. An investigative detention may be "transformed" into an arrest under the Fourth Amendment under certain circumstances. United States v. Hamilton, 587 F.3d 1199, 1215 (10th Cir. 2009). "[I]f police officers' actions exceed what is reasonably necessary under the totality of the circumstances, the stop may only be justified by probable cause or consent." United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994). This may occur due to the use of handcuffs, firearms, or other police techniques inconsistent with the limited scope of an investigation detention, or the detention may become so lengthy that the investigation detention escalates into a de facto arrest. United States v. White, 584 F.3d 935, 952-53 (10th Cir. 2009). "An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1227 (10th Cir. 2008) (quoting United States v. Munoz-Nava, 524 F.3d 1137, 1144 (10th Cir. 2008)).

The government argues that the use of firearms and handcuffs does not automatically raise an encounter to the level of an arrest. The Tenth Circuit has stated that pointing guns at a suspect

"may elevate a seizure to an 'arrest' in most scenarios," but guns may be used without converting an investigative detention into an arrest "where police reasonably believe they are necessary for their protection." United States v. Mosley, 743 F.3d 1317, 1329 (10th Cir. 2014). The government has not identified any specific facts tending to show that police officers had reason to fear for their safety, and the Tenth Circuit precedent on this issue requires that police have some objective basis to believe that firearms are necessary for officer safety within the scope of an investigative detention. See Lundstrom v. Romero, 616 F.3d 1108, 1121-22 (10th Cir. 2010) (police officer justified in briefly pointing firearm at a suspect because he engaged in threatening behavior, and police officer immediately lowered weapon when it was clear that the suspect did not pose a risk to officer safety); United States v. Perdue, 8 F.3d 1255 (10th Cir. 1993) (use of firearms during investigative detention was reasonable when police officers knew that firearms were present at a location where marijuana was cultivated). MacKenzie testified that the CI's tip did not include information that defendant was known to carry a weapon, and none of the police officers involved knew the identity of the occupants of the red Kia before the stop was initiated. There was also no testimony that Corporal MacKenzie or Turnbough observed defendant or Taylor making any movements in the red Kia that would have suggested that they were looking for a weapon. Corporal MacKenzie and Turnbough did testify that based on their training and experience that drug dealers often carry a firearm. However, the mere fact that defendant was suspected of engaging in a drug transaction does not tend to support the use of techniques consistent with an arrest, and the focus must remain on the risk of officer safety and maintaining the status quo. Melendez-Garcia, 28 F.3d at 1052-53 (recognizing that "drugs and violence often go together" but "the naked fact that drugs are suspected will not support a per se justification for use of guns and handcuffs in a *Terry* stop").

9

Without some objective basis to believe that it was necessary to use firearms and to handcuff defendant, the encounter immediately became an arrest, rather than an investigative detention, and the government must establish that it had probable cause to justify the arrest.

Probable cause exists when a police officer has sufficient information "to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). This is an objective standard and a court must consider the totality of the circumstances to determine whether a reasonable officer would have believed there was probable cause to make an arrest. Koch v. City of Del City, 660 F.3d 1228, 1239 (10th Cir. 2011). Probable cause "is measured at the moment the arrest occurs and must derive from facts and circumstances based on reasonably trustworthy information." Cortez v. McCauley, 478 F.3d 1108, 1121 (10th Cir. 2007).

For defendant's arrest to be valid, the government must show that police had probable cause to arrest defendant from the inception of the stop of the red Kia. MacKenzie testified that he believed that he had sufficient evidence to justify a stop of the red Kia, but he did not believe that the evidence rose to the level of probable cause to arrest defendant. The Court agrees with MacKenzie's assessment. MacKenzie received a tip that an unidentified black male driving a black Jeep Liberty would be at the parking lot of the Flying J for the purpose of selling methamphetamine. MacKenzie and Wilson observed the black Jeep Liberty and saw a black male exit the vehicle and get into a white truck. They knew that the black male had a relatively short encounter with the white male driver of the white truck, but they did not see any drugs or money change hands in the white truck. The black male left the white truck and entered a red Kia that was also parked in the Flying J parking lot. MacKenzie and Wilson observed the red Kia drive into a parking lot at a business

across 129th East Avenue, and they saw the black male interact with the driver of the red Kia. They also saw the black male enter the business and get back into the red Kia. The red Kia was stopped by Corporal MacKenzie as it was returning to the Flying J. While this behavior was objectively suspicious, MacKenzie and Wilson had no reliable or trustworthy evidence that a drug transaction actually took place. They also did not know the identity of the driver of the red Kia or the black male identified by the CI. The Court finds that a reasonable police officer faced with these facts would not have probable cause to believe that the occupants of the red Kia had committed a drug offense, even if a police officer felt that further investigation was justified. The encounter became an arrest from the inception of the stop of the red Kia and police lacked probable cause to arrest defendant. The Court finds that defendant was unlawfully detained from the inception of the stop.

Defendant must also show that there is a factual nexus between "the illegality and the challenged evidence," meaning that the evidence defendant seeks to exclude "would not have come to light but for the government's unconstitutional conduct . . . ." Ladeaux, 454 F.3d at 1111. There is no dispute that drugs found on defendant's person would not have been discovered but for the arrest of defendant. The Court finds that defendant has established the required nexus between the illegal conduct and evidence to be excluded, and the evidence seized from defendant's person is subject to suppression under the exclusionary rule.

The exclusionary rule applies when evidence has been obtained by police in violation of a person's Fourth Amendment rights. United States v. Oliveres-Rangel, 458 F.3d 1104, 1115 (10th Cir. 2006). The Court is also required to exclude evidence discovered as a result of the exploitation of the illegal conduct, and this type of evidence is known as the fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 488 (1963). Evidence discovered only as a result of a Fourth

11

Amendment violation may not be admitted at trial. United States v. Pettigrew, 468 F. 3d 626, 634 (10th Cir. 2006). The exclusionary rule also applies to statements made a defendant, even if made voluntarily, during a period of illegal detention. United States v. Lopez-Arias, 344 F.3d 623, 629 (6th Cir. 2003). Statements made during a period of illegal detention are admissible only if some "intervening event of significance" has broken the connection between the constitutional violation and the statements. United States v. Hernandez, 670 F.3d 616, 622 (5th Cir. 2012).

The events in the case occurred within a relatively short period of time, and the drugs on defendant's person were discovered a few minutes after the stop was initiated and after police learned that there were outstanding misdemeanor warrants for defendant. Defendant's statements to Turnbough were made when police believed they were lawfully arresting defendant based on the misdemeanor warrants. Corporal MacKenzie testified that he ran a records check just a few minutes after the stop was initiated, and the testimony of the officers is consistent that relatively little time passed before defendant was taken into custody based on the misdemeanor warrants. The government has made no argument that the drugs found on defendant's person would have inevitably been discovered or that the taint from the initial constitutional violation was sufficiently attenuated to allow admission of evidence seized after the unlawful arrest of defendant. See United States v. Sanchez, 608 F.3d 685, 691 (10th Cir. 2010). The Court finds that any evidence seized during the unlawful arrest of defendant should be suppressed, and this includes the statements made by defendant to Turnbough.[5]

---

[5] The finding as to the inadmissibility of defendant's statements disposes of the arguments concerning these same statements in defendant's motion in limine. Dkt. # 28, at 4-8.

## III.

### A.

Defendant seeks to prevent the government from introducing evidence of his prior convictions under Fed. R. Evid. 404(b). He identifies the following felony convictions that he believes may be used against him at trial:[6]

1. October 10, 2001 - Possession of Stolen Vehicle, Tulsa County District Court Case No. CF 2001-5946

2. April 6, 2006 - Second Degree Burglary, Tulsa County District Court Case No. CF-2006-1608

3. January 5, 2007 - Unlawful Possession of Controlled Drug, Tulsa County District Court Case No. CF 2007-153

4. May 3, 2007 - Possession of Marijuana with Intent to Distribute and Possession of a Firearm after Former Felony Conviction, Northern District of Oklahoma, Case No. 07-CR-080-CVE

The government has filed notice (Dkt. # 31) that it seeks to use Rule 404(b) evidence, particularly defendant's state and federal drug convictions, to show that defendant acted with the intent to commit the charged offense. Dkt. # 31, at 9.

Fed. R. Evid. 404(b) provides, in pertinent part:

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

---

[6] The Court is relying on defense counsel's representation of defendant's criminal history, and this does not preclude the government from seeking to impeach defendant with other convictions that may not be identified in defendant's motion in limine if such convictions should exist.

13

In weighing the admissibility of evidence under Rule 404(b), the Court must consider four factors: (1) whether the evidence is offered for a proper purpose; (2) its relevance; (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect; and (4) the court must give a limiting instruction if the defendant so requests. Huddleston v. United States, 485 U.S. 681, 691 (1988); United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006); United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000).

Based on defendant's motion, it appears that he intends to argue that he did not commit the charged offense and that police planted drugs on him. The government argues that defendant will place at issue his knowledge of the drugs' presence and his intent, and his state and federal drug convictions should be admitted under Rule 404(b) to show that defendant knowingly and intentionally possessed methamphetamine with intent to distribute. This would be a proper purpose for admission of defendant's drug convictions and the convictions would be relevant to show that defendant was acting with the intent to distribute illegal drugs when he was arrested on December 8, 2014. United States v. Trent, 767 F.3d 1046, 1051 (10th Cir. 2014) (evidence of a prior firearm conviction was admissible under Rule 404(b) to rebut defendant's argument that he did not know that the firearm was in his vehicle). The prior drug convictions have substantial probative value if defendant intends to argue that he did not actually possess or intend to possess drugs, and it would not be unfairly prejudicial for the government to rebut defendant's proposed arguments or testimony with evidence of his prior drug convictions. Defendant may request a limiting instruction that the jury may consider evidence of his prior convictions only for a limited purpose, but the government has shown that defendant's prior drug convictions are admissible for a specific purpose identified

in Rule 404(b) and that the probative value of the evidence substantially outweighs any prejudicial effect from admission of the evidence.

**B.**

Defendant states that he intends to testify at trial and he will claim that police planted the drugs on his person. Dkt. # 28, at 9-10. He claims that he will be unfairly prejudiced if the government is permitted to impeach him with evidence of his prior convictions and that the jury will discredit his testimony because he is a "bad person." Id. at 13. The government argues that it should be permitted to impeach defendant with evidence of his burglary and drug convictions, but it does not seek to use the possession of a stolen vehicle conviction as impeachment evidence. Dkt. # 31, at 11-15.

The Tenth Circuit "has long permitted the government to impeach the testimony of a criminal defendant who takes the witness stand in the same manner as any other witness, including reference to prior convictions." United States v. Haslip, 160 F.3d 649, 654 (10th Cir. 1998). Under Fed. R. Evid. 609(a)(1)(B), evidence of a felony conviction may be used to impeach a criminal defendant if the probative value of the evidence outweighs its prejudicial effect. The Tenth Circuit has identified five factors that should be considered before a criminal defendant is impeached with evidence of his prior convictions: (1) the impeachment value of the defendant's prior crimes; (2) the dates of the convictions and the defendant's subsequent history; (3) the similarity between the past crime and charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of defendant's credibility at trial." United States v. Smalls, 752 F.3d 1227, 1240 (10th Cir. 2014). The scope of impeachment under Rule 609(a) is limited to "the essential facts of convictions, the nature of the crimes, and the punishment," and the defendant may not be cross-examined about the details

of his prior convictions. United States v. Commanche, 577 F.3d 1261, 1271 (10th Cir. 2009). Under Rule 609(a), it is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial. United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977).

The government argues that burglary and drug convictions have substantial impeachment value, but defendant contends that these crimes are not probative as to his veracity. Convictions for robbery or burglary can be probative of a person's veracity. See United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995); United States v. Brown, 956 F.2d 782, 787 (8th Cir. 1992). In a drug case, evidence of prior drug convictions has significant impeachment value when a defendant denies involvement with illegal drugs. United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999). Defendant's burglary and drug convictions are less than 10 years old, and the government notes that the offense charged in this case occurred less than eight months from the date defendant was released from prison on federal drug charges. Defendant argues that the prior drug convictions are sufficiently similar to the charged offense that there is a risk that the jury will consider his prior convictions as evidence of his propensity to commit the charged offense. Dkt. # 28, at 13. However, the details of his prior convictions may not be used to impeach defendant and, even if the circumstances of the offenses were similar, the Court would not permit impeachment about the the details of his prior offenses. Commanche, 577 F.3d at 1271; United States v. Chaco, 801 F. Supp. 2d 1217 (D.N.M. 2011). Defendant suggests that his testimony will be a critical part of his defense, because he intends to testify that police planted drugs on his person. When a defendant testifies at trial, he places his credibility at issue and his prior convictions are material evidence that a jury should be permitted to consider when assessing a defendant's credibility. United States v. Toney,

16

27 F.3d 1245, 1254 (7th Cir. 1994). Defendant may request a limiting instruction as to the jury's consideration of the prior convictions, but the prior convictions are relevant to the jury's consideration of his credibility. United States v. Smith, 10 F.3d 724, 727 (10th Cir. 1993). Given the nature of defendant's proposed testimony, his credibility will be a significant factor at trial and the government should be permitted to impeach defendant with his burglary and drug convictions.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Dkt. # 17) is **granted**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine Regarding Criminal History and Alleged Statements about Criminal History Made During Arrest (Dkt. # 27) is **moot in part** and **denied in part**: the motion is moot as to the exclusion of statements made following defendant's arrest and it is denied as to defendant's arguments concerning the use of his prior convictions at trial.

**DATED** this 3rd day of April, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE